UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GS HOLISTIC, LLC,                                           Case No. 24-12155

    Plaintiff,                                              F. Kay Behm
v.                                                         United States District Judge

SMOKERZ TOWN LLC, *et al.*,

    Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT (ECF No. 10)**

**I.    PROCEDURAL HISTORY**

Plaintiff, GS Holistic, LLC ("GS"), filed this trademark action on August 16, 2024, against Defendants, Smokerz Town, LLC, and Fadhil Ahmed, seeking injunctive relief and damages. (ECF No. 1). In Count I of the Complaint, GS alleges violation of the Lanham Act, 15 U.S.C. § 1114, through Defendants' use of counterfeit marks. *Id*. In Count II, GS alleges that Defendants violated 15 U.S.C. § 1125(a) (false designation of origin). *Id*. Defendants were served with the summons and complaint on October 21, 2024, but failed to answer or otherwise respond. GS requested and was granted a clerk's entry of default against Defendants in November 2024. (ECF Nos. 7, 8). On January 29, 2025, GS moved

1

for a default judgment against Defendants. (ECF No. 10). The court held a hearing on Plaintiff's motion for default judgment on May 28, 2025.  For the reasons set forth below, the court **GRANTS** the motion for default judgment.

II.     **LEGAL STANDARD**

"Entry of default and a default judgment are distinct events that require different treatment." *Ramada Franchise Sys. Inc.*, 220 F.R.D. 303, 305 (N.D. Ohio 2004) (internal citation omitted). An entry of default is a prerequisite to a default judgment. Pursuant to Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." An entry of default "conclusively establishes every factual predicate of a claim for relief." *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (citing *Harmon v. CSX Transp.*, 110 F.3d 364, 368 (6th Cir. 1997)). However, entry of a default does not establish damages. *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995); *see also Kelley v. Carr*, 567 F.Supp. 831, 841 (W.D. Mich. 1983) ("A default judgment on well-pleaded allegations establishes only defendant's liability; plaintiff must still establish the extent of damages.")

Default judgment is governed by Fed. R. Civ. P. 55(b)(2). On entry of default, the well-pleaded allegations of the complaint relating to a defendant's

2

liability are taken as true, with the exception of the allegations as to the amount of damages. *Thomas*, 489 F.3d at 299; *see also Kelley*, 567 F. Supp. at 840. Thus, the plaintiff is required to provide proof of all damages sought in the complaint. *See John E. Green Plumbing and Heating Co., Inc. v. Turner Constr. Co.*, 742 F.2d 965, 968 (6th Cir. 1984) ("We recognize that the law 'does not require impossibilities' when it comes to proof of damages, but it does require whatever 'degree of certainty tha[t] the nature of the case admits.'") (internal citations omitted). Fed. R. Civ. Pr. 55(b)(2) allows courts to conduct hearings in order to "determine the amount of damages" so it may effectuate a judgment.

**III.    FACTUAL BACKGROUND**

As a result of continuous and extensive use, GS was granted both valid and subsisting federal statutory and common law rights to the Stündenglass trademark. (ECF No. 1 at ¶ 9, PageID.4). Since 2020, Plaintiff has used the Stündenglass Marks in commerce throughout the United States in connection with the manufacturing of glass infusers and accessories. (*Id*. at ¶ 12, PageID.5). The Stündenglass Trademarks are exclusive to GS and appear clearly on GS's Stündenglass Products, as well as on the packaging and advertisements related to the products. (*Id*. at ¶ 14, PageID.5). GS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and

protecting these Trademarks. (*Id*.). Consequently, products bearing GS's Stündenglass Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS. (*Id*.).

Since 2020, GS has worked to build significant goodwill in the Stündenglass brand in the United States. GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the Stündenglass brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion. (*Id*. at ¶ 16). The Stündenglass Products have been praised and recognized by numerous online publications, as well as publications directed to the general public. (*Id.* at ¶ 17).

At the time the counterfeit product was sold and at the time of Plaintiff's complaint, GS was the owner of federally registered and common law trademarks. The following is a list of the Stündenglass trademarks: (1) U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" under international class 011; (2) U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo under international class 034; and (3) U.S. Trademark Registration Number 6,174,291 for

the standard character mark "Stündenglass" under international class 034. (ECF No. 1 at ¶ 10).

GS sells its products under the Stündenglass Marks to authorized stores in the United States, including in Michigan. (*Id*. at ¶ 19). GS has approximately 3,000 authorized stores in the United States selling its products. As such, Stündenglass branded products reach a vast array of consumers throughout the country. (*Id*.) Because of the recognized quality and innovation associated with the Stündenglass Marks, consumers are willing to pay higher prices for genuine Stündenglass products. (*Id*. at ¶ 20). For example, a Stündenglass brand glass infuser is priced at $599.95, while a non-Stündenglass branded product is also being sold for up to $600, with a range of $199 to $600. *Id*.

Defendants have engaged in continuous and systematic business in Michigan and derive substantial revenue from commercial activities in Michigan. Defendants have offered for sale goods with marks allegedly with Trademarks registered to GS Holistic. (*Id*. at ¶¶ 26-30). Specifically, on January 15, 2023, Defendants offered for sale a counterfeit glass infuser with Stündenglass Marks affixed to it, for a cost of $371.00. (*Id*. at ¶ 33). Defendants' acts constitute willful trademark infringement. (*Id*. at ¶ 45). As such, they have caused and are likely to

5

cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the counterfeit goods sold by Defendants. (*Id*. at ¶ 44).

## IV. ANALYSIS

### A. Count I - § 1114

Title 15 U.S.C. § 1114(1)(a) provides that:

> (1) Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

To establish trademark infringement under 15 U.S.C. § 1114, Plaintiff must show that: (1) it owns a valid trademark; (2) defendant used the trademark "in

6

commerce" without plaintiff's authorization; (3) defendant used plaintiff's trademarks, or an imitation thereof, "in connection with the sale, offering for sale, distribution, or advertising" of goods and services; and (4) defendant's use of plaintiff's trademarks is likely to cause consumer confusion. *Ohio State Univ. v. Skreened Ltd.*, 16 F.Supp.3d 905, 910 (S.D. Ohio 2014) (citing 15 U.S.C. § 1114). The "touchstone of liability" for trademark infringement under 15 U.S.C. § 1114 "is whether defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Id*. (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)).

Based on the admitted factual allegations in the complaint, which the court accepts as true, along with the declarations and associated exhibits, Plaintiff has established the elements required to state a claim for relief for trademark infringement pursuant to 15 U.S.C. § 1114. Plaintiff owns the trademarks at issue, and the Defaulted Defendants have violated the Lanham Act by advertising, distributing offering for sale, and/or selling products in commerce that bear identical copies of Plaintiff's trademarks, without Plaintiff's consent or authorization. By defaulting, Defendants admit that their use of Plaintiff's trademarks has caused and will continue to cause confusion among consumers

regarding the origin and quality of the goods offered by the Defaulted Defendants. Accordingly, Plaintiff is entitled to default judgment against the Defaulted Defendants for trademark infringement.

    B.    <u>Count II - § 1125(a)</u>

In Count Two, Plaintiff asserts a federal claim of unfair competition predicated on asserted trademark infringement. This second claim rests on § 43(a) of the Lanham Act, which is codified at 15 U.S.C. § 1125(a), which provides in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

8

Under the Lanham Act, the same test is used for trademark infringement and unfair competition: likelihood of confusion. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir.2006) (citing *Two Pesos v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992)). Based on the admitted factual allegations in the complaint, along with the declarations and associated exhibits, the Defaulted Defendants have used Plaintiff's trademarks in advertising, distributing and selling their products, and have done so without Plaintiff's consent or authorization. The Defaulted Defendants' goods are likely to be mistaken for the genuine product offered for sale by Plaintiff, and result in the confusion of consumers, who will believe that Defendants' products are a genuine product originating from and approved by Plaintiff. Thus, the Defaulted Defendants are liable under 15 U.S.C. § 1125(a) for unfair competition. Accordingly, Plaintiff is entitled to a default judgment on its claim for unfair competition in violation of 15 U.S.C. § 1125.

    C.    <u>Damages</u>

Well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, but not as to damages. *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)). "[W]here the damages sought are not for a sum certain, the Court must determine the propriety and amount of the

default judgment." *J & J Sports Prods., Inc. v. Rodriguez*, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008) (citing Fed. R. Civ. P. 55(b)). Rule 55(b)(2) permits, but does not require, the district court to conduct an evidentiary hearing to determine damages. *Arthur v. Robert James & Assoc. Asset Mgmt., Inc.*, 2012 WL 1122892, at *1 (S.D. Ohio 2012) (citing *Vesligaj v. Peterson*, 331 F. App'x 351, 354–55 (6th Cir. 2009)). The court may rely on affidavits submitted by plaintiff in support of damages without the need for a hearing. *Id*. at *2 (citation omitted).

The Lanham Act, 15 U.S.C. § 1117(a), provides that trademark damages may include:

> (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

The Lanham Act provides for a statutory damages award of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just . . ." 15 U.S.C. § 1117(c)(1).  Where willfulness is demonstrated, however, a maximum award of $2,000,000 per counterfeit mark per type of good sold may be awarded. 15 U.S.C. § 1117(c)(2).

GS acknowledges that actual damages are difficult to calculate, but offers an assessment of damages. (ECF Nos. 14, 15, 16). Plaintiff states that it is seeking only a fraction of the actual losses to its business and that damages of $150,000.00 are reasonable since the actual damages to the business are far in excess of this amount. In evaluating what constitutes a just award, the court considers several factors. *See Bestway Inflatables & Material Corp. v. Doe 1-10*, 2021 WL 755483, at *1 (E.D. Mich. Jan. 7, 2021) (assessing "(1) the expenses saved and profits reaped, (2) revenues lost by plaintiff, (3) value of the copyright, (4) deterrent effect on others besides the defendant, (5) whether the defendant's conduct was innocent or willful, (6) whether defendant cooperated in providing records from which to assess the value of the infringing material, and (7) the potential for discouraging the defendant."

Several courts have found statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed. *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (collecting cases). Statutory damages do not only compensate for injuries sustained but also act as a deterrent and discourage wrongful conduct by the defendant and others. *See Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 852-53 (E.D. Mich. 2006). Further, "[a] court may infer that a defendant's infringement is willful from the defendant's failure to defend." *Coach, Inc. v. Cellular Planet*, 2010 U.S. Dist. LEXIS 62033, *6 (S.D. Ohio June 22, 2010); *Microsoft Corp. v. McGee*, 490 F. Supp.2d at 880 (S.D. Ohio May 7, 2007). Moreover, courts find that the willfulness standard for increasing damages under 15 U.S.C. § 1117(c) includes knowingly, intentional, or reckless acts. *See Lorillard Tobacco Co. v. Yazan's Serv. Plaza, Inc.*, 2007 U.S. Dist. LEXIS 45612, *16 (E.D. Mich. June 25, 2007); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994) ("Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights.").

Based on the court's discretion, the range for statutory damages in the Lanham Act, and the willfulness of the Defaulted Defendants as evidenced by

12

their failure to defend this lawsuit, the court finds that Plaintiff's damages request of $150,000.00 is reasonable and appropriate. This damages award is also consistent with other damages awards for similar conduct by courts within this circuit. *See e.g.*, *Juul Labs, Inc. v. Fli High, LLC*, 2021 WL 3633512, *2 (N.D. Ohio Aug. 17, 2021) (awarding $150,000 statutory damages for three marks); *BBK Tobacco & Foods LLP v. AAA Traders Inc.,* 2020 WL 4220465, at *3 (E.D. Mich. July 23, 2020) (awarding $50,000 per trademark); *Luxottica Grp., S.p.A. v. 111 Pit Stop, Inc.*, 2020 WL 4287198, at *7 (M.D. Tenn. July 27, 2020) (awarding $100,000 per counterfeit mark, which was well within the permissible statutory range and significantly less than the statutory maximum.); *Microsoft Corp. v. McGee*, 490 F. Supp.2d 874, 882 (S.D. Ohio June 22, 2010) (awarding plaintiff $ 100,000 in statutory damages for each of five trademarks, plus $ 30,000 in statutory damages for each of seven trademarks, for a total of $710,000 in statutory damages).

  D. <u>Permanent Injunction</u>

Plaintiff also seeks a permanent injunction. To obtain such relief, a plaintiff must show that: (1) it has suffered irreparable injury; (2) remedies at law are not adequate to compensate for that injury; (3) the balance of hardship between the plaintiff and defendant weighs in favor of a permanent injunction; and (4) it is in

the public interest to issue an injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). In the case of a default judgment, the court need not hold an evidentiary hearing to grant a permanent injunction, because there are no factual issues in dispute. *See Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 546 (6th Cir. 2005); *Profusion Indus., LLC v. Chem-Tek Sys., Inc.*, 2016 WL 7178731, at *6 (N.D. Ohio Dec. 9, 2016) ("The Court may issue a permanent injunction without an evidentiary hearing when no triable issues of fact are involved.") (citation omitted). The decision whether to grant a permanent injunction lies within the sound discretion of the court. *Profusion Indus.*, 2016 WL 7178731, at *6.

"The Lanham Act provides that a court may grant an injunction 'according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office' or to prevent the violation of any common law trademark rights." *United Press Int'l, Inc. v. Glob. One News, Inc.*, 2020 WL 2572483, at *4 (M.D. Tenn. May 21, 2020) (quoting 15 U.S.C. § 1116(a)). "The law of this Circuit holds that no particular finding of likelihood of . . . irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Am. Auto. Ass'n v. Dickerson*, 995 F. Supp.2d 753, 757-

58 (E.D. Mich. 2014) (quoting *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999)). The Sixth Circuit has explained that irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from infringement or unfair competition. *Id.* (quoting *Circuit City Stores*, 165 at 1056); *see also Lifted Research Grp., Inc. v. Behdad, Inc.*, 591 F. Supp.2d 3, 8 (D.D.C. 2008) ("[T]he Court agrees that Defendant's continuing disregard for Plaintiff's rights demonstrates that Defendant will continue to infringe on Plaintiff's rights, absent an injunction. This finding alone entitles Plaintiff to a permanent injunction."). Irreparable harm ordinarily follows from infringement, and the court has found that Defendants have infringed on Plaintiff's marks, so the court does not need to make a specific finding as to irreparable harm. *See Calvert Health, LLC v. Four Leaf Liquidators, LLC*, 2024 WL 69953, at *9 (M.D. Tenn. Jan. 5, 2024). Additionally, it is in the public interest to enforce federal trademark law and to prevent consumers from being misled regarding the nature of the products purchased from Defendants. *Id*. (citing *Chanel, Inc. v. Jermaine Wrice*, 2015 WL 521144, at *9 (N.D. Ohio Feb. 9, 2015)); *see also Future Lawn, Inc. v. Maumee Bay Landscape Contractors, L.L.C.*, 542 F. Supp.2d 769, 781 (N.D. Ohio 2008) (stating it is "virtually axiomatic" that the public interest is served by

15

enforcing the protections Congress has granted to owners of service marks) (citation omitted).

Based on the foregoing and the evidence provided by GS Holistic in support of its motion for default judgment, the court finds it is entitled to a permanent injunction against Defendants under the Lanham Act.

**V.    CONCLUSION**

For the reasons set forth above, the court **GRANTS** Plaintiff's motion for default judgment.  A separate judgment will follow outlining the specific relief granted. This is a final order and closes the case.

**SO ORDERED**.

Date: May 29, 2025  　　　　　　　　　　　s/F. Kay Behm
　　　　　　　　　　　　　　　　　　　　　F. Kay Behm
　　　　　　　　　　　　　　　　　　　　　United States District Judge